**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff-Appellee*, | § | |
| | § | 5th Cir. No. 26-20216 |
| v. | § | S.D. Tex. No. 4:24-cr-00371 |
| | § | |
| PATRICK BROWN | § | |
| *Defendant-Appellant*. | § | |

# UNITED STATES' RESPONSE TO DEFENDANT-APPELLANT'S APPLICATION FOR RELEASE PENDING APPEAL FROM A JUDGMENT OF CONVICTION

Patrick Brown conspired to obtain bail bonds on more favorable terms by submitting falsified co-signer financial reports. For this, he was charged with one count of conspiring to commit wire fraud in violation of 18 U.S.C. §§ 1343 & 1349. He pleaded guilty and was sentenced to six months imprisonment and one year of supervised release. He now asks this Court to grant him release pending appeal, resting on the same argument he made in a motion to dismiss the indictment, namely that the indictment fails to allege a scheme to obtain money or property.

He is wrong. As the district court explained in a thorough memorandum opinion, the object of the scheme was to obtain bail bonds on more favorable terms than would have otherwise been available

without the fraudulent co-signer documents. This fraud allowed individuals to obtain bonds for less than they would have otherwise been offered had they been truthful and deprived the bail bond company's insurer and the local government of money and/or property. The indictment was sufficient and the conviction is valid. At the very least, the issue he presents does not point so clearly in his favor as to justify the extraordinary relief of release pending appeal. And, regardless, his documented criminal history evidences a risk of dangerousness and flight which independently precludes the relief he seeks.

## I. Proceedings and disposition below.

### *A. The indictment and plea.*

The operative indictment in this case alleged a wide-ranging scheme involving the bail bond system in Harris County, Texas. *See* ROA.267. As is typical in Texas courts, a defendant charged with a crime may be assigned a bail bond amount that they must pay if they wish to secure their release pending the disposition of their proceedings. *See* ROA.268 (¶1). A defendant has several options – they can decline to post the bond, post the bond themselves, or (as relevant here) pay for the services of a bail bond company. ROA.268 (¶1).

These companies are owned by bail bondsman, licensed professionals who, upon payment of a premium by the defendant (typically a percentage of the court-set bond amount), will guarantee to the state court they will pay the amount set by the judge if the defendant does not comply with the proceedings. *See* ROA.268-269 (¶1-2). Bail bond companies obtain insurance to cover their losses in case the defendant does not comply. *See* ROA.269-70 (¶7-8).

In determining whether to guarantee a bail bond, the bond companies and their insurers will often require financial documentation from the defendant and any co-signers – third parties who agree to accept the obligation to pay the full bond amount in the event of forfeiture. *See* ROA.269 (¶3). If a defendant has a co-signer, especially a financially stable one, the insurer is more likely to agree to insure the bail bond company against any losses on that bond, and the bond company in turn is more likely to guarantee payment of the bond on defendant's behalf and do so for a lower premium. *See* ROA.269 (¶3), 1640-41.

This case concerns Financial Casualty & Surety, an underwriter for AABLE bail bonds, who guaranteed bonds AABLE assumed. *See* ROA.269 (¶7). Brown and his co-defendants conspired "to falsify and

obtain falsified co-signer financial reports to qualify individuals, charged with criminal offenses, who would not otherwise qualify for the coverage necessary to meet the terms of their bond." *See* ROA.270 (¶10). They "recruit[ed] straw co-signers who represented they worked at companies or earned incomes" they did not, and the "falsified co-signer financial reports were subsequently emailed or submitted via electronic communication" to a Georgia entity. *See* ROA.270 (¶11-13). "These fraudulent reports were relied upon by the Government and/or the insurance agency/agent to enter into a three-party agreement known as a surety bond" and by "entering into the surety bond rather than having to pay the full amount of the bond to the Court, the defendants incurred a financial gain." ROA.270-71 (¶11-15).

For his role in this scheme, Brown was charged with one count of conspiring to commit wire fraud in violation of 18 U.S.C. §§ 1343 & 1349. *See* ROA.279 (¶36-37). He joined his co-defendants in moving to dismiss the indictment contending, *inter alia*, that the indictment fails to allege a scheme to obtain money or property since the intent of the scheme was not to cause financial harm or obtain money/property but to obtain bail bonds. *See* Appellant's Motion at 5. The district court denied that motion,

reasoning that the indictment was sufficient because "[t]he government alleges that the defendants' scheme was not just to avoid paying the full bond amounts, but to use false statements about the cosigners' finances and employment to lower the amounts the defendants had to pay for the bonds, thereby decreasing the amounts the government received and increasing the insurance company's risk of default." ROA.195, 202.[1]

Brown then conditionally pleaded guilty, reserving the right to "contest on direct appeal the district court's order denying defendant's motion to dismiss (Docket No. 1104)." ROA.1635 (¶5). A pre-sentence investigation report was prepared, with the final version appearing on the docket on April 6, 2026. *See* ROA.1652. Relevant here, the PSR noted an extensive criminal history with convictions for, among others, theft, possession of cocaine, assault on a public servant, and three convictions for assault on a family member. ROA.1663-74. Brown was ultimately sentenced to six months imprisonment and one year of supervised release for the instant offense. ROA.312.

---

[1] The district court MTD proceedings concerned a previous version of the indictment, but the second superseding indictment to which Brown pleaded is relevantly similar. *Compare* ROA.140 (first superseding indictment) *with* ROA.267 (second superseding indictment).

*B. Brown moves the district court, and then this Court, for release pending appeal.*

On May 20, 2026, Brown moved the district court under 18 U.S.C. § 3143(b) to stay his surrender to custody pending appeal. ROA.347. He re-urged the primary ground in the defendants' motion to dismiss – that the superseding indictment failed to charge a scheme whose intent was to obtain money or property because it failed to allege any intent for any bond to actually be forfeited – and claimed this constituted a "substantial question of law or fact likely to result in . . . reversal" under § 1343(b)(1)(B)(i). ROA.350. The district court granted in part and denied in part the motion two days later – staying his surrender date until July 21, 2026. It did not state reasons. ROA.355.

On July 6, 2026, Defendant moved this court "for an order to stay surrender and grant release . . . pending the outcome of his appeal . . . pursuant to 18 U.S.C. § 3143(b) and Rule 9(b)." Appellant's Motion at 1. He again claims that there is a substantial question of law or fact likely to result in reversal because the goal of the scheme, in his view, was not to obtain money or property since there was no intent for the bail bonds to actually be forfeited. Appellant's Motion at 5. This Court ordered a response from the government as soon as possible.

## II. Brown cannot meet his burden to show that release pending appeal is warranted here.

A court may release a defendant pending an appeal if it finds (1) by clear and convincing evidence that the person is not likely to flee or pose a safety risk, (2) that the appeal is not for the purposes of delay, and it (3) raises a substantial question of law or fact (4) likely to result in reversal. *See* 18 U.S.C. § 3143(b). For the reasons set forth below, Brown fails on the first and third of those prongs.

Both this Court and the district court have jurisdiction over motions for such release via 18 U.S.C. § 3141(b), which provides that "release and detention authority pending sentence and appeal is vested in a judge of a court having original jurisdiction over the offense, or a judge of a federal appellate court." *United States v. Valera-Elizondo*, 761 F.2d 1020, 1023 n. 6 (5th Cir. 1985). Federal Rule of Appellate Procedure 9 lists the requirements for such motions.

### *A. There are some Rule 9 deficiencies in Brown's motion, but they are not jurisdictional and do not preclude the Court from reaching the merits.*

Rule 9(b) governs release pending appeal for a defendant who has been convicted and incorporates the substantive requirements of Rule 9(a). *See* Fed. R. App. P. 9(b). Rule 9(a) in turn requires that the "district

court must state in writing, or orally on the record, the reasons for an order regarding the release or detention[.]" *See* Fed. R. App. P. 9(a)(1). That does not appear to have happened here. *See* ROA.355.[2] Rule 9(b) also requires that the "papers filed by the party seeking review must include a copy of the judgment of conviction." *See* Fed. R. App. P. 9(b). Brown does not appear to have done so, as his motion only attaches the district court's order denying relief in part.

Though Rule 9 is mandatory, the United States has not found any authority (mindful of the compressed briefing schedule) indicating these requirements are jurisdictional. Accordingly, the Court can use its discretion under Rule 2 to suspend these requirements. *See* Fed. R. App. P. 2(a) ("On its own or a party's motion, a court of appeals may—to expedite its decision or for other good cause—suspend any provision of these rules in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b).").

---

[2] The district court docket notes two sealed discovery status reports were entered on July 1, 2026 and June 2, 2026 respectively. *See* ECF Nos. 2570 & 2593. Though the documents are ROA paginated (ROA.1746-47) they are not in the record on appeal provided to the undersigned, and the undersigned does not know if they contain anything relevant to the instant motion. If they do, it is Brown's obligation to provide them. *See* Fed. R. App. P. 9(a)(1) ("A party appealing from the order must file with the court of appeals a copy of the district court's order *and the court's statement of reasons* as soon as practicable after filing the notice of appeal." (emphasis added)).

The United States encourages it to do so. The district court did not provide written reasons for its denial, so we do not know whether it denied Brown's motion because he believed Brown posed a danger to others or the community,[3] because he failed to show a substantial question of law that would likely lead to reversal, or some other reason. This Court has remanded in similar circumstances for the district court to state its reasons. *See United States v. Martinez*, No. 23-50534, 2023 U.S. App. LEXIS 21266 at *1-2 (5th Cir. Aug. 14, 2023).

But the United States respectfully submits that the current record on appeal gives the Circuit everything it needs to resolve the motion. The district court already rejected his challenge to the indictment in its memorandum opinion and gave its reasons for doing so. ROA.195. This Court can also assess Brown's risk of danger and flight through the criminal history and background provided in the PSR. ROA.1663-74. And, at this time, the United States has no reason to believe the appeal is for the purpose of delay. Further, while the judgment of conviction may

[3] The district court did grant Brown bond pending trial, ROA.1652-53, so that perhaps indicates the basis of the ruling was the "substantial question of law" prong, but the presumption in the pretrial context is against detention, while the presumption in the pending appeal context is for detention. *Compare* 18 U.S.C. § 3142(e)(1) *with* § 3143(b)(1). So there is not much to glean from that.

not be attached to the "papers filed by" Brown "seeking review" it is in the record on appeal. ROA.312. Therefore, on both points, resolving this motion now will "expedite" the proceedings and excusal of the Rule 9 issues is warranted under Rule 2.

*B. There is not clear and convincing evidence that Brown is not likely to flee or pose a danger to any other person or the community.*

To obtain release pending appeal, Brown must show "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" 18 U.S.C. § 3143(b)(1)(A). He cannot make that showing given the extensive criminal history documented in the PSR. *See United States v. York*, No. 11-111, 2012 U.S. Dist. LEXIS 72821 at *4 (M.D. La. May 24, 2012) (considering information in the PSR when making this determination).

On dangerousness, the PSR documented 21 prior offenses, several of which were violent or involved illicit substances. For instance, he has multiple convictions for assaulting family members, ROA.1671 (¶62), 1672 (¶66), 1674 (¶68), and he pleaded guilty to assaulting a public servant. ROA.1667 (¶56). He also has multiple drug and theft convictions. *See* ROA.1664-71. This history, and particularly the family

assaults that involved his partner and children, demonstrate that he is a danger to his family and the community at large, especially because his motion states that he currently resides with his children. *See* Appellant's Motion at 4. There is certainly not clear and convincing evidence that justifies his release.[4]

On flight risk, Brown has been convicted of evading arrest and has twice been convicted of failing to identify himself to a peace officer. *See* ROA.1665 (¶51), 1669 (¶58), 1672 (¶64). Though the convictions are older, they demonstrate a history of disregarding law enforcement that Brown does not even attempt to rebut and shows a risk that he may not comply with court orders in the future.

Brown's motion does not engage with any of this history, saying in cursory fashion that he is not a danger or flight risk because he resides with family, mostly complied with his pretrial release, and the instant offense is non-violent. Appellant's Motion at 4-5. That is not enough to meet his burden in view of the PSR. The fact that he lives with his family (including his children) should increase, not decrease, his dangerousness

[4] The Government was unopposed to a limited "sixty-day extension" of Brown's surrender date in the district court. *See* ROA.355. That does not mean the Government thinks an indefinite suspension of his surrender date while his appeal is pending is appropriate or harmless to public safety.

given his history of family assaults. And his compliance with his pre-trial release was spotty, as the PSR notes three violations. ROA.1657-58. Further, though he classifies his instant offense as "non-violent," the factual basis to which he pled indicates that the co-conspiracy was designed to get him out of jail on a lower bond while he was being held on assault charges, ROA.1640, which reinforces his dangerousness.

In sum, Brown cannot meet his burden of showing by clear and convincing evidence that he would not pose a danger or a flight risk, so his motion should be denied.

### *C. The indictment was sufficient and alleged a scheme to defraud whose object was obtaining money or property.*

Brown has "no constitutional right to bail after his conviction and sentencing." *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987). Instead, as discussed above, he must overcome the "presumption against the grant of such bail" by satisfying the requirements of § 3143(b). *See id.*

A defendant seeking to show that he raises a substantial question of law or fact must do more than show the issue can be reasonably litigated, rather the "defendant's argument [must have] a substantial chance of prevailing." *Valera-Elizondo*, 761 F.2d at 1024. That means the "issue presented must raise a substantial doubt (not merely a fair doubt) as to

the outcome of its resolution." *See id.* at 1024.[5] Brown falls far short of that demanding standard.

Brown challenges the substantive sufficiency of the indictment to which he pled. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). That is "a legal question reviewed de novo." *United States v. Cooper*, 714 F.3d 873, 876-77 (5th Cir. 2013). "An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *See id.* (internal quotation marks and citation omitted). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999).

Though Brown pleaded guilty to conspiracy to commit wire fraud, the claim he raises in the instant bail motion challenges only the elements of the underlying substantive offense. *See* Appellant's Motion

[5] Brown's citation to *Barefoot v. Estelle*, 463 U.S. 880 (1983) is inapposite, as that case does not concern § 3143(b).

5. He asserts that he has raised a substantial question of law or fact because "the superseding indictment failed to charge the defendant with an actual crime because the intent of the fraudulent scheme was not to obtain money or property, as required by 18 U.S.C. § 1343, since there was no intent for the bonds to actually be forfeited." *See id.*[6]

The federal wire fraud statute prohibits "us[ing] the wires to execute 'a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Kousisis v. United States*, 605 U.S. 114, 121 (2025) (quoting 18 U.S.C. § 1343). "A defendant commits federal wire fraud, in other words, only if he both engaged in deception and had money or property as an object of his fraud." *See id.* (internal quotation marks and citations omitted). These "misrepresentations need not be made directly to the victim." *United States v. McMillian*, 600 F.3d 434, 449 (5th Cir. 2010).

Brown, notably, does not contest that this scheme involved deception. He pins his motion entirely on the second part, arguing the object of the fraud was not to obtain money or property from the

[6] He does not raise any of the other arguments for dismissal litigated below so the United States does not address those here.

government or the insurers. *See* Appellant's Motion 5-7. That argument misunderstands how courts have defined "money or property" in this context. "Property, as ordinarily understood, extends to every kind of valuable right and interest." *United States v. Hoffman*, 901 F.3d 523, 536 (5th Cir. 2018). That includes "[t]he right to be paid money" that is "legally due." *See Pasquantino v. United States*, 544 U.S. 349, 356 (2005).

Thus, wire fraud encompasses "scheme[s] to deprive a victim of his entitlement to money." *See id.* And this can occur through "fraudulent inducement" where "defendants deprive[] [the victim] of a protected property interest by fraudulently inducing them" to "part with their money or property." *See United States v. Constantinescu*, 157 F.4th 392, 395-96 (5th Cir. 2025). That is why, for example, the "right to full payment" for a product or service "is money or property" that a defendant deprives the victims of when they "fraudulently obtained the [product or service] for less than full payment." *See United States v. Ali*, 620 F.3d 1062, 1067 (9th Cir. 2010).

The indictment here alleged a scheme that fits comfortably within these principles. Brown conspired to submit false co-signer documents through the bail bond company to its insurer. *See* ROA.270 (¶10-15).

These “falsified co-signer financial reports” were intended, *inter alia*, to make the surety bond for specific individuals much more attractive to the insurer such that they would offer to guarantee the bond company’s obligation on more favorable terms. *See* ROA.270-71 (¶10-15).

In other words, defendants conspired to deprive the insurers of money “legally due” for the service rendered because they “fraudulently obtained the [surety bond guarantees] for less than” what they would have paid had they been truthful. *See Pasquantino*, 544 U.S. at 356; *Ali*, 620 F.3d at 1067. Likewise, the co-conspirators deprived the local government of the higher bond amount it would have received had the individuals been denied surety bonds and had to pay the court the full bond directly, which would have been much more likely had truthful information been provided. *See* ROA.270 (¶14); ROA.1641 (Brown was detained on a $525,000 court-set bond and “by having co-signers submit falsified information, [he] would not have to pay $525,000 in bonds up front in cash.”); *see also McMillian*, 600 F.3d at 449 (finding sufficient evidence where “the victims were left without money that they otherwise would have possessed.”).

Brown claims, as he did below, that the intent of the scheme was

not to cause financial harm because the "object" of the fraud was to get individuals "out of jail while awaiting trial." Appellant's Motion at 5-6. That is a non-starter. The point of the conspiracy was to misrepresent the financial position of co-signers to obtain a service that incarcerated individuals would not have qualified for (or would have had to pay a higher premium for) had truthful financial information been submitted. This was the "object of the fraud" and directly targeted the "money or property" of the bail bond company's insurer and the local government. *See Kousisis*, 605 U.S. at 121 (cleaned up).

Brown also seizes on the fact that "the indictment did not assert an intent to forfeit the bonds or that any were actually forfeited[.]" Appellant's Motion at 6. That misunderstands the object of the conspiracy. The point was not to enrich themselves by forfeiting the bonds. It was to obtain bonds at an artificially depressed price when they would not have been able to obtain them at all – or as cheaply – had the co-conspirators provided truthful co-signer information to the insurer. That fraud directly resulted in the defendants receiving an insurance-backed bond guarantee they would not have otherwise qualified for, providing them a windfall and leaving the insurer and the local

government worse off than they would have otherwise been.[7]

Brown also cites *Ciminelli v. United States*, 598 U.S. 306 (2023) and *Cleveland v. United States*, 531 U.S. 12 (2000) to support his motion. Those cases do not help him. *Cleveland* is readily distinguishable because the scheme in that case concerned making false statements to obtain a poker license from Louisiana, and "permits or licenses of this order" did not qualify as property. *See* 531 U.S. at 15. This bears little resemblance to the property rights at issue in this case, which as discussed above, are understood to be valid predicates for a § 1343 scheme.

*Ciminelli* rejected the "right-to-control theory" that the Second Circuit had applied to wire fraud cases, wherein "a defendant is guilty of wire fraud if he schemes to deprive the victim of potentially valuable economic information necessary to make discretionary economic decisions" because such information is "not a traditional property interest." 598 U.S. at 309 (cleaned up). This prosecution, however, did not lie on the right to control theory – it was premised on routing falsified

---

[7] As part of this argument, Brown claims that "the bonding company did not and would never have had to pay any money." Appellant's Motion at 6. Even if the Court were to accept his view of the indictment, "the wire fraud statute is agnostic about economic loss" and a conviction can stand "regardless of whether [a defendant] seeks to leave the victim economically worse off." *Kousisis*, 605 U.S. at 124.

documents through a bail bond company to its insurer to obtain a service that incarcerated individuals would not have qualified for (or would have had to pay a higher premium for) had truthful financial information been submitted. *See Kousisis*, 605 U.S. at 122-23 ("The fraudulent-inducement theory is consistent with both the text of the wire fraud statute and our precedent interpreting it.").

Indeed, the Seventh Circuit upheld wire fraud and related conspiracy charges post-*Ciminelli* in a case that bears similarity to the scheme at issue. *See United States v. Griffin*, 76 F.4th 724 (7th Cir. 2023). That case concerned the Small Business Administration, which "provides guarantees on certain loans made to small businesses." *See id.* at 733. To obtain this guarantee, "a borrower must comply with" various provisions for eligibility and restrictions. *See id.* "The defendants engaged in a scheme to obtain SBA guarantees for loans that did not meet the SBA's guidelines and requirements" by, *inter alia*, making "false statements on loan-guarantee applications." *See id.* at 734. The defendants moved for a judgment of acquittal claiming the "Government did not prove that the wire fraud scheme deprived the SBA of a protectable money or property interest." *See id.* at 737.

The Seventh Circuit rejected that claim, distinguishing the right of control theory, because "the Government's case is grounded in the defendants' use of false representations to obtain loan guarantees from the SBA that would not have been granted if the true facts had been made known" and these "guarantees, that committed the SBA to stand behind a significant portion of the loan amount in case of default, are most certainly 'property' as required by the wire fraud statute." *See id.* at 739.

Here too, the purpose of the conspiracy was to induce the insurer to guarantee bonds it would never have otherwise agreed to cover if truthful co-signer information had been provided. These "guarantees . . . to stand behind" the bond obligation are property for the purposes of the wire fraud statute. *See id.* And the fraudulently obtained guarantees allowed the bond company to cover bail bonds for cheaper or in circumstances where coverage would not normally be offered, allowing defendants to access coverage for their obligations they would not otherwise have received and leaving the insurers and local government worse off. This fits comfortably within the ambit of the wire fraud statute.

At bottom, the indictment plausibly alleges the disputed "money or property" element of wire fraud with sufficient particularity so as to

protect Brown against a subsequent prosecution. *See Cooper*, 714 F.3d at 876-77. At a minimum, Brown falls well short of showing he has a "substantial chance of prevailing[,]" as he must do to secure release under § 3143(b). *See Valera-Elizondo*, 761 F.2d at 1024.

## III. Conclusion

For the foregoing reasons the Government respectfully requests this Court deny Brown's motion for release pending appeal.

Respectfully submitted,

AARON F. REITZ
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

By: s/ *Cole J. Royer*
COLE J. ROYER
Assistant United States Attorney
Attorney for Respondent
1000 Louisiana St., Suite 2300
Houston, TX 77002
(713) 567-9102

## CERTIFICATE OF SERVICE

I, Assistant United States Attorney Cole Royer, hereby certify that on July 9, 2026, an electronic copy of this response was served by notice of electronic filing via this Court's CM/ECF system upon opposing counsel.

s/ *Cole J. Royer*
COLE J. ROYER
Assistant United States Attorney
Attorney for Respondent

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this brief contains 4,400 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook font, 14 point font for text and 12 point font for footnotes.

3. This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because this brief has been redacted of any personal data identifiers.

4. This brief complies with the electronic submission of 5th Cir. R. 25.2.1, because this is brief is an exact copy of the paper document.

5. This brief is free of viruses because this brief has been scanned for viruses with the most recent version of the McAffee Endpoint Security scanning program.

*s/ Cole J. Royer*
COLE J. ROYER
Assistant United States Attorney
Date: July 9, 2026